# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GEORGE FORTNA, on behalf of himself individually and all other former and current employees similarly situated, ) ) ) ) Plaintiffs, ) ) v. ) ) QC HOLDINGS, INC., a Kansas corporation; ) QC FINANCIAL SERVICES, INC., ) ) Defendants. ) | Case No: 06-CV-16-CVE-PJC |

## REPORT AND RECOMMENDATION

Before the Court for report and recommendation is the Motion for Conditional Collective Action Certification, Limited Discovery and Authorization to Send Notice of Collective Action filed by Plaintiff George Fortna ("Fortna"). (Dkt. ##15 and 16). The matter came on for hearing on April 27, 2006. (Dkt. #36). Fortna moves for conditional certification of a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b), on behalf of himself and other "similarly situated" former and current employees of QC Holdings, Inc. ("QC Holdings") and its wholly owed subsidiary QC Financial Services, Inc. ("QC Financial Services") (collectively "QC"), limited discovery regarding the identity of all putative class members [1] and authorization to send notice of collective action to all putative class members. Based on the oral arguments, briefs and applicable law, the Court recommends that the motion for conditional certification of a collective action be granted and the attached notice (Attachment 1) and consent to sue (Attachment 2) be authorized.

Under the FLSA, an employee may bring a collective action on behalf of "similarly

---

[1] The motion for limited discovery (Dkt. #16) is addressed in a separate order.

situated" employees. 29 U.S.C. §216(b). The purpose of collective action under the FLSA is to give "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources," and to benefit the judicial system "by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). To effect this purpose, "the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Id*. at 170-71. However, unlike class actions under Rule 23 of the Federal Rules of Civil Procedure, putative class members under the FLSA must opt in to the class rather than opt out of it. 29 U.S.C. §216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001); *Brown v. Money Tree Mortgage, Inc*., 222 F.R.D. 676, 678-79 (D. Kan. 2004).

Accordingly, the Tenth Circuit has approved a two-step approach to determine whether the putative class members are "similarly situated" under §216(b). The Court must first determine whether a collective action should be certified for notice purposes. For this "conditional certification," the Court "'require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik v. Storage Technology Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997); *Williams v. Sprint/United Management Company*, 222 F.R.D. 483, 485 (D. Kan. 2004). The standard at this stage is a lenient one. *Thiessen*, 267 F.3d at 1103; *Brown*, 222 F.R.D. at 680 (conditional certification appropriate based on allegations in complaints supported

by the affidavits of two former employees); *Williams*, 222 F.R.D. at 486-87 (allegations in complaint supported by affidavits sufficient to establish that putative class members were "together the victims of a single decision, policy, or plan"). If at this first stage the plaintiff meets his burden of showing the existence of employees who are likely to assert similar claims, the Court may "conditionally" certify the collective action, allow limited discovery as to the identity of the proposed class and authorize that notice of the lawsuit be given to each putative member of the class. *Hoffman-La Roche*, 493 U.S. at 170-71 (approving plaintiffs' discovery of the names and addresses of putative class members and court authorization of notice under §216(b)); *Hammond v. Lowe's Home Centers, Inc.*, 216 F.R.D. 666, 672-73 (D. Kan. 2003) (allowing discovery of the names and addresses of other potentially similarly-situated employees); *Schwed v. General Electric Co.*, 159 F.R.D. 373, 375 (N.D.N.Y 1995) ("[E]ven where later discovery proves the putative class members to be dissimilarly situated, notice to those preliminarily identified as potential plaintiffs prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA]."). At the second stage, after conclusion of discovery and pursuant to a defendant's motion to decertify the collection action, the Court revisits the issue of class certification under a stricter standard, at that point reviewing several factors including "'(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required by the [FLSA] before instituting suit.'" *Thiessen*, 267 F.3d at 1103 (quoting *Vaszlavik*, 175 F.R.D. at 678).

Fortna seeks to bring a collective action on behalf of similarly situated employees who

are or have been employed by QC as a Branch or Store Manager in its U.S. stores during the three years prior to the filing of this action for unpaid overtime compensation, liquidated damages and prejudgment interest. Fortna defines the class as follows:

> All persons who are currently employed or were employed within the United States by Defendant QC Holdings, Inc., QC Financial Services, Inc. or any of their respective subsidiaries, at any time on or after [January 9, 2003],[2] and who are or were classified as "exempt" employees holding the job classification or performing the job functions of "Branch Manager" a/k/a "Store Manager."

*Plaintiffs' Motion, p. 2* (Dkt. #15). The issue before the Court on Plaintiff's motion for conditional certification, therefore, is whether Fortna has met the lenient standard of showing that QC's Branch Managers are "similarly situated"; that is, whether there are substantial allegations that the Branch Managers were or are subject to a common policy which allegedly violates the FLSA.

In his Complaint, Fortna alleges that QC willfully and intentionally violated the FLSA by misclassifying and failing to pay legally mandated overtime compensation to him and other similarly situated current and former employees of QC within the United States who have held or currently hold the job of "Branch Manager" or "Store Manager." *Complaint* ¶¶ 13-19 (Dkt. #2). Fortna alleges that he was employed as a Branch Manager by QC from approximately June 2004 through December 2005 and was required to work in excess of forty hours per work week without overtime compensation. *Id*. at ¶¶ 14-15. He contends that QC[3] misclassified its Branch Manager and Store Manager positions as "exempt" to avoid paying overtime compensation.

---

[2] Plaintiff incorrectly identified the date as January 11, 2003 in his motion, though his proposed Notice and the Agreed Notice correctly identify January 9, 2003 as the date the lawsuit was filed.

[3] QC states that as of January 2006 QC Financial Services operated 544 branches in 25 states and 275 of those branches have three or more employees. The purpose of the stores is the operation of a payday loan business.

*Id.* at ¶16.

In support of the allegations, Fortna submits two affidavits[4] attesting that he personally observed and has knowledge that QC's Branch Managers had the same job requirements and similar pay provisions as his and were subject to QC's company-wide policy of misclassifying these positions as exempt. *Affidavit of George Fortna*, *Plaintiffs' Motion, Exhibit B at ¶4* (Dkt. #15). He attests that he was employed by QC from approximately June 2004 through December 2005 and throughout most of that time worked as Branch Manager. *Id*. at ¶¶ 1 and 2. Fortna states that he worked on average approximately fifty hours per week and was not paid overtime wages. *Id*. at ¶3. He attests that QC's Branch Managers have no discretion in operating the stores or in establishing store policies and procedures and that their primary duties consist of "routine, clerical and otherwise non-managerial functions." *Second Affidavit of George Fortna*, *Plaintiffs' Reply, Exhibit A at ¶¶2-5* (Dkt. #23). Fortna states that it is QC and not the Branch Manager who

> sets and adjusts the rates of pay for all non-exempt store staff; makes all pricing determinations; dictates which computer systems and software will be used; sets all parameters and allows no independent discretion with respect to check cashing requirements or payday loan requirement; sets quotas for collections; decides all matters concerning advertising and promotions; sets the hours of store operations; decides the layout of the store; establishes the employee dress code; makes all purchasing decisions; and chooses the store's security measures and system.

*Id*. at ¶3. He states that there is no significant function or task performed by the Branch Manager which is not also performed by non-exempt store staff and the Area Manager is the "real manager" of employees. *Id*. at ¶¶ 6-7. Finally, he identifies Kelly Lee Jackson and Victoria

---

[4] In his reply, Fortna submitted a second affidavit addressing QC's objections that his first affidavit lacked the specificity necessary to support conditional certification and that Fortna had failed to identify one employee who would opt in. *Plaintiffs' Reply, Exhibit A* (Dkt. #23).

Otterbridge as two employees interested in joining the lawsuit. *Id*. at ¶10.

Fortna also attaches the affidavits of Kelly Jackson ("Jackson") and Phillip Harris ("Harris") in support of conditional certification. Jackson states that she was employed by QC from approximately August 2004 through December 2005 and throughout most of her employment held the position of Branch Manager. *Affidavit of Kelly Jackson, Plaintiffs' Reply, Exhibit B at ¶¶1-2* (Dkt. #23). Jackson attests that she worked on average approximately 45 hours per week as Branch Manager and was not paid overtime. *Id*. at ¶3. She reiterates Fortna's statements regarding the limited nature of the duties and responsibilities of QC's Branch Managers. *Id*. at ¶6-11. Jackson, like Fortna, states that "QC's tightly controlled store operations are standardized nationwide" and thus the functions and duties of Branch Manager do not vary. *Id*. at ¶14. Jackson also submits her consent to be a plaintiff in this action. *Consent to Sue under the F.L.S.A., Plaintiffs' Reply, Exhibit C*. Harris attests that as Area Manager for QC he personally observed and has knowledge that the Branch and Store Managers had the same job requirements and similar pay provisions and were each subject to QC's company-wide policy to misclassify them as exempt, that the job descriptions for Branch Manager on QC's corporate website at www.qcholdings.com are exactly the same for each Branch Manager position in the United States, and that he has personal knowledge of other Branch Managers who desire to opt-in this action. *Affidavit of Phillip Harris*, *Plaintiffs' Motion, Exhibit C* (Dkt. #15).

QC objects to the motion arguing that (1) Fortna has failed to meet his burden for conditional certification; (2) the Court should not order a notice which duplicates information provided to Branch Managers as a result of QC's voluntary self-audit; (3) Fortna is an inadequate class representative; (4) the proposed class is overly broad; and (5) Plaintiffs'

proposed Notice and Consent to Sue Form are defective.

QC argues that Fornta has failed to meet his burden as his affidavit is based on conclusory allegations and does not disclose any of his duties or identify even one employee who desires to opt in. As noted above, Fortna submitted his second affidavit and Jackson's affidavit to address the deficiencies criticized by QC. The Court finds that the allegations in the Complaint together with the affidavits of Fortna, Jackson and Harris meet the "notice-stage" requirement of "substantial allegations" that the Branch Managers were/are "victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik*, 175 F.R.D. at 678) . Plaintiff has alleged a common policy or plan by QC to avoid paying overtime wages to its Branch Managers. And the affidavits provide sufficient evidence at this stage that Fortna was employed as a Branch Manager for QC and was not paid overtime for hours he was required to work in excess of forty hours per week, that other QC employees were and are employed in similar Branch Manager positions, that a Branch Manager's primary duties consist of routine, clerical and other non-managerial functions, that the job description and duties of QC's Branch Managers are uniform throughout the U.S. stores, and that QC's Branch Managers were not paid overtime for hours they were required to work in excess of forty hours per week as they are classified as exempt. Finally, Fortna has identified Jackson and Victoria Otterbridge as interested in opting in to the lawsuit and Jackson has submitted her consent to the lawsuit.

QC also argues that conditional certification of a collective action is particularly inappropriate as this case turns on the exemption status of its Branch Managers which is "extremely individual and fact-intensive, requiring 'a detailed analysis of the time spent performing administrative duties' and 'a careful factual analysis of the full range of the

employee's job duties and responsibilities,' " citing *Mike v. Safeco Ins. Co.*, 274 F.Supp.2d 216, 220 (D. Conn. 2003) (citation omitted).  However, as noted above, Plaintiff's affidavits attest to the uniformity of job duties and responsibilities of QC's Branch Managers.  *Gieseke v. First Horizon Home Loan Corp.*, 408 F.Supp.2d 1164, 1168 (D. Kan. 2006) ("The court has allegations and evidence before it that plaintiffs' job duties are similar.  That is all that is required in the notice stage.").  Further, excluding collective action solely because a case is based on the exemption status of an employee, especially at the "notice" stage, would effectively undermine the remedial purpose of the Act.  Indeed,  "[w]hether the positions the Plaintiff held were exempt is not an issue when deciding whether to authorize notice in an FLSA action." *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F.Supp.2d 101, 105 (S.D.N.Y. 2003).

QC contends that QC Financial Services' voluntary self-audit and resulting notices to its Branch Managers obviate the need for any notice of this lawsuit.  In support QC cites the affidavit of Chief Financial Officer of QC Holdings, Rachel Lipsett ("Lipsett").  Lipsett states that as a result of a United States Department of Labor ("DOL") investigation into its Jackson, Mississippi store, QC Financial Services agreed to a self-audit at the DOL's request and though it believes that Branch Managers in stores with less than three peoples are exempt under the administrative exemption to the FLSA, the company agreed to settle the matter and pay overtime compensation to Branch Managers at the affected stores, while reserving its right to claim the exemption for those who chose not to accept payment.  *Declaration of Rachel Lipsett, Defendants' Response, Attachment 1* at ¶¶5-7 (Dkt. #21).  Lipsett attests that as a result of its agreement, QC Financial Services send 650 checks to current or former Branch Managers who worked with less than three employees, with an explanatory note and a receipt generated by the

DOL, "Receipt for Payment of Lost or Denied Wages, Employment Benefits, or Other Compensation," Form WH-58 (the "WH-58 form"). *Id*. at ¶8 and Exhibit A.  She contends that as of March 14, 2006, 530 of the branch managers had waived their claims under the FLSA by either filling out the WH-58 form or cashing the check and 5 branch managers currently or previously employed in Oklahoma and 29 in California have not waived their claims. *Id*. at ¶¶ 9-11.  QC argues that because the DOL form specifically discloses the existence of a private right of action under the FLSA and that an employee could recover more if he or she chose to bring suit, QC's Branch Managers are already aware of their rights and the proposed notice would only cause confusion.[5]  Further, QC contends that notice should not be given to those Branch Managers who have waived their FLSA rights.

Although Plaintiff agrees that Branch Managers who have executed the WH-58 form have effectively waived their claims under the FLSA and should not receive notice of this lawsuit, Plaintiff contends that Branch Managers who merely cashed the settlement check without knowingly executing the WH-58 form have not effectively waived their claims under §216(c)[6] and should be allowed to receive notice.  QC responds that Branch Managers who

---

[5]The DOL form provides in pertinent part:
Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs.  Generally, a 2-year statute of limitations applies to the recovery of back wages.  Do not sign this receipt unless you have actually received payment of the back wages due.
*Defendants' Response, Exhibit A to Lipsett Declaration.*

[6] Section 216(c) provides in pertinent part:
The Secretary is authorized to supervise the payment of the unpaid . . . overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection

cashed their settlement checks waived any right to bring a FLSA claim even if they did not sign the WH-58 form and, therefore, none of the 530 Branch Managers who cashed their checks should receive notice, citing *Heavenridge v. Ace-Tex Corp.*, 1993 WL 603210 (E.D. Mich).

The Court is not persuaded by QC's argument that the conditional certification notice would "over" inform QC's current and former Branch Managers of their FLSA rights. Further, any confusion which may result from the notice is sufficiently addressed by the amended language in the Agreed Conditional Class Notification that it is QC's position "that branch managers who participated in the Department of Labor supervised settlement have waived their Fair Labor Standards Act claims." *Submission of Agreed Conditional Class Notification* (Dkt. #37).

Also, the Court finds premature QC's attempt to assert a defense of waiver in seeking to exclude notice to Branch Managers who have cashed settlement checks without signing the WH-58 form as QC has not established that those Branch Managers were aware that cashing the checks waived their FLSA rights. *Thiessen*, 267 F.3d at 1103 ("defenses available to defendant which appear to be individual to each plaintiff" should be addressed during the second state analysis); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F.Supp.2d 234 (N.D.N.Y. 2002) (finding at the notice stage that "the Court cannot determine whether and how the waivers affect the rights of each plaintiff and potential plaintiff"). *Heavenridge* does not direct a different conclusion. The Court notes that the merits of the employer's waiver defense in *Heavenridge* were decided on a motion for summary judgment in an individual case and not as a preemptive

---

(b) of this section to such unpaid . . . overtime compensation and an additional equal amount as liquidated damages.
29 U.S.C. §216(c).

exclusion of the claims of putative class members on a motion for conditional certification of collective action. Further, in determining that the plaintiff waived his FLSA rights by cashing the DOL settlement check, the *Heavenridge* court found that "it can be inferred that Plaintiff cashed the check with the understanding that cashing the check constituted a settlement agreement" as the check was marked "payment in full as determined by the Department of Labor." *See also Bullington v. Fayette County School District*, 540 S.E.2d 664, 667 (Ga. Ct. App. 2000) (finding that employee waived right to sue under the FLSA when he cashed the settlement check but refused to sign the WH-58 form as the employee acknowledged that he was aware that "*accepting the check in settlement*, not signing the form, would extinguish his right to sue") (emphasis in original). No such facts supporting waiver are presently before the Court. However, as Fortna concedes that all Branch Managers who have signed the WH-58 form have waived their FLSA claims, the Court concludes that they should be excluded from the defined class.

QC also asserts that a collective action should not be conditionally certified because Fortna is an inadequate class representative. QC argues that Fortna is an inadequate class representative because based on the DOL's calculations, he stands to gain less than $1,000 if he prevails; he engaged in significant misconduct while employed as Branch Manager and was terminated for failing to meet the requirements of his job; and Fortna has not performed even the "most rudimentary task of determining proper parties" as QC Holdings does not operate any store. Fortna contends this objection is without merit as his "best day" recovery is approximately $10,000, plus costs and attorney fees; QC's allegations against him are unfounded and that QC Holdings is a proper defendant as Fortna has alleged that QC Financial is the alter

11

ego and under the sole direction of QC Holdings.[7]

Although the Tenth Circuit has held that §216(b) does not incorporate Rule 23 requirements of numerosity, commonality, typicality and adequacy of representation, *Thiessen*, 267 F.3d at 1103, " the adequacy of a class counsel or a class representative is not necessarily irrelevant in a putative FLSA §16(b) collective action because the court has an inherent interest in ensuring that opt-in plaintiffs are adequately represented." *Brown*, 222 F.R.D. at 682. However, QC has failed to establish at this point in the litigation that Fortna is not an adequate representative. First, the Court notes that there is no minimum amount of damages required for an employee to bring a collective action under §216(b). The FLSA simply provides that an action may be brought under §216(b) "by any one or more employees." 29 U.S.C. §216(b). Second,  although QC filed a motion to amend their answer to file counterclaims of fraud and conversion against Fortna and to seek disgorgement of his compensation under the "faithless servant" doctrine on the day of the hearing , no counterclaim has yet been filed and even if the Court allows QC to assert the counterclaims against Fortna, there is insufficient evidence before the Court to determine the merits of the allegations.[8] Similarly, the merits of Fortna's alter ego allegations against QC Holdings cannot be determined prior to discovery.

---

[7]Fortna attaches QC Holdings' SEC filings which he states "often times intermingle and attribute different events to different entities." *Plaintiffs' Reply, n.7 and Exhibit G.*

[8]The only "evidence" QC has presented is the affidavit of John Prentzler ("Prenzler"), the Regional Manager for QC Financial Services, who states that he terminated the employment of Fortna and Harris after investigating an apparently uncollectible loan in the name of someone who had been a "guest" of Fortna's at a company Christmas party and as a result of his investigation he concluded that Fortna had violated company policy by approving loans to this friend as well as other customers on accounts that were not open and that Harris had failed to uncover this in an audit. *Declaration of John Prentzler, Defendants' Response, Attachment 3*. Prentzler also states that Fortna, Harris and another store manager were involved in a scheme to get kickbacks from customers for the approval of loans and from Prentzler's review of delinquent loans he estimated QC's losses due to the embezzlement and/or fraudulent acts of Fortna and Harris exceed $20,000. *Id.*

QC also objects to the scope of the proposed class as overly broad. QC contends that the proposed class includes those who are not "similarly situated" because (1) it includes Branch Managers of large stores who oversee two or more full-time employees and are exempt under the executive exemption while Fortna was a Branch Manager of a small store who was exempt only under an administrative exemption; (2) Branch Managers in California are subject to a different regulatory scheme as California has enacted more stringent overtime standards than the FLSA standards; and (3) Fortna seeks to include claims that are barred by the statute of limitations as the filing of this suit does not toll the statute of limitations for all putative class members.

Consideration of different possible exemptions and job responsibilities of the Branch Managers of "large" and "small" stores is appropriate at the second or final certification stage when the Court considers the "disparate factual and employment setting of the individual plaintiffs." *Thiessen*, 267 F.3d at 1103. At the notice stage, whether QC considers the Branch Managers exempt under the administrative or executive exemptions, Fortna has sufficiently alleged that they are similarly situated in that they carry out similar duties.

The Court also finds no basis for excluding notice to California Branch Managers of this FLSA lawsuit based on that state's more stringent overtime laws. The California Branch Managers have a claim under the FLSA if they were denied overtime wages. Should they wish to pursue claims for overtime wages they can choose to opt in this case to enforce their rights under the FLSA or file suit in California state court to enforce additional rights under California law.

Finally, the Court agrees with QC that the filing of this lawsuit does not toll the statute of limitations for putative class members and that an action is commenced for putative class

members on the date they file their written consent with this Court. 29 U.S.C. §§ 255(a) and 256(b). Therefore, the Notice should be sent to "All persons who were or are employed as a Branch Manager by QC Holdings, Inc. or QC Financial Services, Inc. ("QC") at any time within the three years preceding the present date [the date notice is given]." *Gjurovich*, 282 F.Supp.2d at 106. QC's other objections have been addressed and the parties have agreed to the forms of the attached Notice of Pendency of Overtime Wages Lawsuit Against QC Holdings, Inc. and QC Financial Services, Inc. (Attachment 1) [9] and the Opt-In Consent to Sue Form (Attachment 2).

For the reasons stated above, the Court recommends that Plaintiff be granted permission to proceed as a collective action and that the attached Notice and Consent to Sue be authorized for mailing to the putative class members.

## Objections

The District Judge assigned to this case will conduct a de novo review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned. As part of her review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation. A party wishing to file objections to this Report and Recommendation must do so within ten days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file written objections to this Report and Recommendation may bar the party failing to object from appealing any of the factual or legal findings in this Report and Recommendation that are accepted or adopted by the District Court. *See Moore v. United States*,

---

[9] At the request of the Court at the April 27, 2006 hearing, the parties conferred and submitted the attached Notice as an Agreed Conditional Class Notification. (Dkt. #37).

950 F.2d 656 (10th Cir. 1991); and *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

DATED, this 1st day of May, 2006.

_____
Paul J. Cleary
United States Magistrate Judge

**Attachment 1**

**NOTICE OF PENDENCY OF OVERTIME WAGES LAWSUIT AGAINST
QC HOLDINGS, INC. AND QC FINANCIAL SERVICES, INC.**

*George Fortna, et al. v. QC Holdings, Inc. and QC Financial Services, Inc.*
**U.S. District Court for the Northern District of Oklahoma
Case No.: 4:06-CV-016-CVE-PJC**

TO:   All persons who were or are employed as a Branch Manager by QC Holdings, Inc. or QC Financial Services, Inc. ("QC") at any time within three years preceding the present date.

RE:   Lawsuit against QC for alleged violations of the overtime wage provisions of the Fair Labor Standards Act of 1938 (the "FLSA").

The purpose of this Notice is to advise you of an overtime wages lawsuit that has been filed against QC and to advise you of the legal rights you have in connection that suit.

1. Description of the Litigation.

A former Branch Manager of QC filed this lawsuit against QC on January 9, 2006. Plaintiff alleges that when he was employed as a Branch Manager he was misclassified as "exempt" from the FLSA overtime pay provisions and as a result, QC failed to pay him overtime wages for all time he spent performing work for QC in excess of forty (40) hours per week. Plaintiff George Fortna is suing QC to recover unpaid overtime wages, liquidated damages, attorneys' fees and costs from QC which he claims are due under the FLSA. QC denies any liability to the Plaintiff. It is QC's position that all branch managers are exempt from the overtime provisions of the Fair Labor Standards Act. It is also QC's position that branch managers who participated in the Department of Labor supervised settlement have waived their Fair Labor Standards Act claims.

2. Your Right to Join this Lawsuit Against QC and be Represented by Plaintiff's Counsel.

If you worked as a Branch Manager for QC at any time since January 9, 2003, then you are eligible to join this lawsuit if you ever worked more than forty (40) hours in any work week. In order to join this lawsuit and to be represented by Plaintiff's counsel, you must complete and return the attached "Opt-In Consent to Sue Form" by [sixty days from the date of notice], either by mail, fax or email to:

THE SCHAFFER LAW FIRM, PLLC
ATTN: QC CLASS ACTION
406 SOUTH BOULDER AVE., SUITE 450
TULSA, OKLAHOMA 74103
TOLL FREE TELEPHONE: (888) 599-3480
FAX: (918) 582-6106
**david@schafferlawfirm.com**

The lawyer's phone number is (918) 599-9073 or toll free at (888) 599-3480. You may call that number is you wish to have further information about the case or if you need more help in joining the lawsuit. If you fail to return the "Consent to Sue" form to the plaintiff's lawyer in time for it to be filed with the

federal court on or before the above deadline, then you will not be able to participate in this lawsuit. In the alternative, you can join this lawsuit by representing yourself or by counsel of your own choosing.

If you wish to have further information about the case, you may also contact counsel for QC. You may mail, fax or email requests to:

> SEIGFREID, BINGHAM, LEVY SELZER & GEE, PC
> ATTN: QC CLASS ACTION
> 2800 COMMERCE TOWER
> 911 MAIN STREET
> KANSAS CITY, MO 64105
> TOLL FREE TELEPHONE: _____
> FAX: (816) 474-3447
> EMAIL: _____

If you choose to join this case, you will be bound by the judgment, whether it is favorable or unfavorable. Joining this lawsuit will entail participating in the discovery process. You may also be held liable for costs associated with this lawsuit, and for potential counterclaims which could be asserted against you by QC.

3. <u>To Stay Out of the Lawsuit</u>.

If you do not wish to be part of the lawsuit, you need not to do anything. If you do not join the lawsuit, you will not be part of the case in any way and will not be bound by or affected by the result, whether favorable or unfavorable. Your decision not to join this lawsuit will not affect your right to bring a similar case on you own in the future. However, claims under the Fair Labor Standards Act must be brought within two (2) years, unless the employer's violation of the law was "willful," in which case the claims must be brought within three (3) years of the alleged violation.

4. <u>No Retaliation Permitted</u>.

The defendants are prohibited by law from taking any retaliatory action against any person, including a current employee, who joins the lawsuit. The defendants have denied the allegations of the lawsuit and have raised various defenses. No final decision on the merits of this lawsuit has been made by the Court.

THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF OKLAHOMA, THE HONORABLE CLAIRE V. EAGAN. THE COURT HAS TAKEN NO POSITION IN THIS CASE REGARDING THE MERITS OF PLAINTIFF'S CLAIMS OR OF THE DEFENDANTS' DEFENSES.

Dated: _____

## Attachment 2

**OPT-IN CONSENT TO SUE FORM**
*George Fortna, et al. v. QC Holdings, Inc. et al.*
**U.S. District Court for the Northern District of Oklahoma**
**Case No.: 4:06-CV-016-CVE-PJC**

**Complete and Mail, Fax or Email this Form To:**
ATTN:  QC CLASS ACTION
THE SCHAFFER LAW FIRM, PLLC
406 SOUTH BOULDER AVE., SUITE 450
TULSA, OKLAHOMA 74103
TELEPHONE:  (888) 599-3480
FAX:  (918) 582-6106
david@schafferlawfirm.com

Name: _____    Social Security #: _____
(Please Print)

Address:_____    Cell Phone: _____
         _____    Home Phone:_____
         _____    Email: _____

**CONSENT TO JOIN COLLECTIVE ACTION**
**Pursuant to Fair Labor Standards Act**
**29 U.S.C. § 216(b)**

1.      I consent and agree to pursue my claims arising out of unpaid overtime work as a Branch Manager at QC Holdings, Inc. and/or QC Financial, Inc. ("QC") in connection with the above referenced lawsuit

2.      I have worked in the position of Branch Manager at QC from on or about _____ (month, year) to on or about _____ (month, year).

3.      During the above time period, I worked in excess of forty (40) hours per week, but was not paid overtime compensation.

4.      I understand that this lawsuit is brought under the Fair Labor Standards act of 1938, as amended, 29 U.S.C. §§ 201 et seq.  I hereby consent, agree and opt-in to become a Plaintiff herein and be bound to any judgment by the Court or any settlement of this action.  I understand that I may be held liable for costs associated with this lawsuit, and for potential counterclaims which could be asserted against me by QC.

5.      I designate the Class Representative George Fortna as my agent to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation and all other matters pertaining to this lawsuit.

6.      By signing and returning this Consent to Sue, I understand that I will be represented by The Schaffer Law Firm, PLLC on a contingency fee basis without prepayment of attorney's fees.  I understand that if Plaintiffs are

**Attachment 2**

successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that The Schaffer Law Firm, PLLC may petition the Court for an award of attorneys' fees and costs to be paid by the Defendant or Defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount of attorneys' fees received from the defendant or one-third of my total settlement or judgment amount, whichever is greater.

_____   _____
(Date)                                                            (Signature)

**\*\*NOTE\*\***
**Statute of Limitations concerns mandate that you return this form as soon as possible to preserve your rights. (See "Notice of Collective Class Action Lawsuit" for time deadlines and further information regarding this lawsuit).**