**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| GEORGE FORTNA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )   Case No. 06-CV-00016 CVE-PJC |
| | ) |
| QC HOLDINGS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' OBJECTIONS TO MAGISTRATE'S
<u>REPORT AND RECOMMENDATIONS</u>**

        DOERNER, SAUNDERS, DANIEL
         & ANDERSON, L.L.P.
        Michael C. Redman, OBA #13340
        mredman@dsda.com
        Raymond H. Tipton, III, OBA #20871
        rtipton@dsda.com
        320 South Boston Avenue, Suite 500
        Tulsa, Oklahoma  74103-3725
        Phone:  918-582-1211
        Fax:  918-591-5398

        SEIGFREID, BINGHAM, LEVY
         SELZER & GEE, P.C.
        Rachel H. Baker, MO. #42200
        David E. Shay, MO. #37677
        2800 Commerce Tower
        911 Main Street
        Kansas City, Missouri  64105
        Phone:  816-421-4460
        Fax:  816-474-3447
        rbaker@sblsg.com
        Pro Hac Vice

        ATTORNEYS FOR DEFENDANTS

Dated:  May 16, 2006

**TABLE OF CONTENTS**

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................ 1

II.  STANDARD OF REVIEW ........................................................................................ 2

III.  ARGUMENTS AND AUTHORITIES ...................................................................... 3

    A.    The Magistrate Judge's Report and Recommendation and the Magistrate Judge's Order Contain an Irreconcilable Conflict. ................... 4

    B.    The Class Definition is Overly Broad as to Ending Date ........................... 6

    C.    The Magistrate Judge Erred in Requiring Notice to Employees Who Have Settled Their Claims as Part of a DOL-Supervised Settlement ............................................................................................... 7

    D.    The Magistrate Judge Erred in Requiring Notice to Employees Who Are Not Similarly Situated to Plaintiff .......................... 12

    E.    Plaintiff Is an Inadequate Class Representative ....................................... 14

IV.  CONCLUSION ........................................................................................................ 15

i

# TABLE OF AUTHORITIES

**Cases**
*Baltimore Gas & Electric Co. v. FERC,* 252 F.3d 456 (D.C. Cir. 2001) ...........................11
*Bernard v. Household International, Inc.*, 231 F. Supp. 2d 433 (E.D. Va. 2002)...............3
*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945).......................................................7
*Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676 (D. Kan. 2004) ............................14
*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837(1984) ....9
*Cochran v. Ernst & Young*, 758 F. Supp 1548 (E.D. Mich. 1991)....................................10
*Coker v. Sullivan*, 902 F.2d 84 (D.C. Cir. 1990) ...............................................................11
*Conservative Club of Washington v. Finkelstein*, 738 F. Supp. 6 (D.D.C. 1990) .............10
*Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272 (M.D. Ala. 2004)............3
*Heavenridge v. Ace-Tex Corp.* 1993 W.L. 603210 (E.D. Mich.) ..................................9, 10
*Bullington v. Fayette County School District*, 540 S.E.2d, 664 (Ga. Ct. App. 1000)..........9
*Heckler v. Chaney*, 470 U.S. 821 (1985) ..........................................................................11
*Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989).....................................................3
*Horne v. United States Automotive Association*, 279 F. Supp. 2d 1231 (M.D. Ala. 2003) .3
*McKenzie v. Kindred Hospitals East L.L.C.*, 276 F. Supp. 2d 1211 (M.D. Fla. 2003) .......3
*Mike v. Safeco Ins. Co.*, 274 F. Supp. 2d 216 (D. Conn. 2003).........................................13
*Mion v. Aftermarket Tool  & Equipment*, 990 F. Supp. 535 (W.D. Mich. 1997) ..............10
*Roebuck v. Hudson Valley Farms, Inc.*, 239 F.Supp.2d 234 (N.D.N.Y. 2002) .................10
*Sierra Club v. Whitman*, 268 F.3d 898 (9th Cir. 2001) .....................................................11
*Solis v. Hotels.Com Texas, Inc.* 2004 W.L. 1923754 at *4 (N.D. Tex.)............................10
*White v. Osmose, Inc.*, 204 F. Supp. 2d 1309 (M.D. Ala. 2002) ..................................3, 14

**Statutes**
28 U.S.C. §636(b)(1) ............................................................................................................3
29 U.S.C. §213(a)(1)...........................................................................................................12
29 U.S.C. §216(c) ........................................................................................1, 7, 9, 10, 11
29 U.S.C. §255(a) ................................................................................................................4
29 U.S.C. §256(b).................................................................................................................4

**Rule**
Fed. R. Civ. P. 72(b) ..................................................................................................1, 2, 3, 6

**Federal Regulations**
29 C.F.R. Parts 541.100 & 541.200................................................................................12

**COME NOW** defendants, QC Holdings, Inc. and QC Financial Services, Inc., and for their objections to the Magistrate Judge's May 1, 2006 Report and Recommendation, state as follows:

## I.     INTRODUCTION

The primary issue presented by this Objection is whether notice of a collective action should be sent to hundreds of employees whose claims are barred by the Fair Labor Standards Act. The Magistrate Judge's May 1 Report and Recommendation suggests that this Court should order such a futile act. Adopting the Report and Recommendation would require notification to (1) employees whose claims are barred by the statute of limitations and (2) employees whose claims are barred pursuant to 29 U.S.C. §216(c) because the claims were settled as part of a settlement supervised by the Department of Labor. The Report and Recommendation is amiss; notice, if any, must be limited to those employees who have the potential to assert a claim.

Defendants object to the Report and Recommendation in its entirety save one finding. Defendants do not object to the recommendation that no Notice should be sent to employees who have signed Department of Labor form WH-58. This matter should not be certified as a collective action and, moreover, the Report and Recommendation defines the class too broadly. Given that the Court's consideration of Defendants' objection will include a review of the record, see Fed. R. Civ. P. 72(b), Defendants will not burden this Objection will all of the arguments previously submitted. Rather, Defendants incorporate by reference their Memorandum in Opposition to Motion for Conditional Collective Action Certification, Limited Discovery and Authorization to Send Notice of Collective Action as though fully set forth herein.

The case is inappropriate for collective action treatment because the essence of plaintiff's Complaint is the misapplication of overtime exemptions. This is extremely individual and fact-

1

intensive, requiring a detailed analysis of the time spent performing administrative duties and a careful factual analysis of the full range of each employee's job duties and responsibilities. By definition, the evidence will be individual for each putative plaintiff and the efficiency normally associated with collective actions cannot be achieved.

Moreover, even if certification was appropriate, the Report and Recommendation defines the class improperly. For instance, the class defined in the Report and Recommendation is inconsistent with the class described in the accompanying Order. Moreover, the class is overly broad as to time and includes hundreds of parties whose claims are barred by statute. The class also includes hundreds of employees who are not "similarly situated" to plaintiff.

Finally, Defendants object to the Report and Recommendation because George Fortna is not an appropriate class representative. Here, plaintiff asks for this Court's imprimatur on the solicitation of additional parties and the forms that appoint Fortna as the agent of all putative class members. Because the Consent to Sue form gives Fortna virtually absolute discretion to act on behalf of class members, the Court has a legitimate interest in protecting class members and ensuring that solicitation on behalf of Fortna is desirable. Because Fortna showed both poor judgment and a lack of trustworthiness while employed by QC Financial, it is inappropriate to place him in a position as the *sole* agent to act on behalf of the class.

## II.   STANDARD OF REVIEW

This Court has plenary review of the May 1 Report and Recommendation. A magistrate judge's proposed findings of fact and recommendations are subject to *de novo* review by the district court. *See* Fed. R. Civ. P. 72(b) ("The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which a specific written objection has been made . . .."); *see*

2

*also* 28 U.S.C. §636(b)(1). The court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge. Fed. R. Civ. P. 72(b).

### III.   ARGUMENTS AND AUTHORITIES

The Supreme Court has recognized that "district courts have the discretion, in appropriate cases, to implement § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989). The approval of notice is not, however, mandatory, but rather, discretionary. *Bernard v. Household International, Inc.*, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002). This Court also has discretion in shaping the class; it may adopt, reject or modify the class proposed by plaintiff. *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1315 (M.D. Ala. 2002)(limiting conditionally certified class). Because voluntary joinder[1] is a superior procedure in this instance, the Report and Recommendation should be rejected in its entirety.

Defendants object to the class definition contained in the Report and Recommendation on several grounds. First, there is an irreconcilable conflict between the Order requiring production of names and the Report and Recommendation. The Order requires production of names for whom the Report and Recommendation recognizes as having time-barred claims. Second, because QC Financial and its subsidiaries pay all branch managers overtime, the proposed class

---

[1] Plaintiff has submitted only one additional consent to sue since filing this action more than four months ago. (See Consent from Kelly Jackson attached to Plaintiff's Reply). Plaintiff also identified Victoria Otterbridge as a putative class member who wishes to participate although no Consent from Ms. Otterbridge has been submitted. Ms. Otterbridge, however, has already settled her claim with QC Financial. Declaration of Frances King, attached as Exhibit A, ¶8. Before facilitating notice of a collective action, a district court should satisfy itself that there are other employees who desire to opt in. *McKenzie v. Kindred Hospitals East L.L.C.*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003) (No collective action where plaintiff "failed to present evidence of any individual's interest in joining this lawsuit."); *Horne v. United States Automotive Association*, 279 F. Supp. 2d 1231, 1236 (M.D. Ala. 2003). In *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272 (M.D. Ala. 2004), collective action notice was denied because plaintiffs did not carry their burden "of demonstrating that other plaintiffs exist who desire to opt-in." *Id.* at 1277. Identification of one person who can easily be joined is inadequate to support a motion for conditional collective action.

3

should be closed as of March 18. No manager hired subsequent to that date is similarly situated to plaintiff.

Defendants also object to the class definition because it requires notice to employees who have waived their claims through a Department of Labor-approved settlement. The Report and Recommendation seeks to impose additional requirements on the settlements that are beyond what is called for in the FLSA. Moreover, the Report and Recommendation seeks to interfere with the DOL's non-reviewable discretion. Finally, the Report and Recommendation includes within the class hundreds of employees who are not similarly situated. Because resolution of plaintiff's claims will leave unresolved the claims of these employees, they should not be included in the class.

Defendants also object to the Report and Recommendation because plaintiff is not a proper class representative. Before this Court assists plaintiff in soliciting putative class members to appoint plaintiff as their sole agent to exercise virtually absolute discretion in pursuing this class, the Court should be certain that its approval is of the Notice and Consent to Sue form is well taken. The Court should not endorse plaintiff as the agent of all putative class members given the questionable exercise of discretion shown by plaintiff while he was employed by QC Financial Services.

### A. The Magistrate Judge's Report and Recommendation and the Magistrate Judge's Order Contain an Irreconcilable Conflict.

As set forth in Defendant's Response, the statute of limitations for any potential plaintiff to make a claim for unpaid overtime wages is three years (if a finding of willfulness is made). 29 U.S.C. §255(a). Further, in a collective action under the Fair Labor Standards Act, the statute of limitations look-back period is set from the date that each individual class member files their consent to join the suit with this Court. 29 U.S.C. §256(b). As of this date, no class members

4

have received notice or filed consents to join the matter prior to today's date (excepting plaintiff and Kelly Jackson). As such, none of the additional putative class members could have a statute of limitations look-back period beyond May 15, 2003.

Noting with approval these same issues, pages 13 and 14 of the Magistrate's Report and Recommendation states as follows:

> Finally, the court agrees with QC that the filing of this lawsuit does not toll the statute of limitations for putative class members and that an action is commenced for putative class members on the date they file their written consent with this Court. 29 U.S.C. §§255(a) and 256(b). <u>Therefore, the Notice should be sent to "All persons who were or are employed as a Branch Manager by QC Holdings, Inc. or QC Financial Services, Inc. ("QC") at any time within the three years preceding the present date [the date notice is given]."</u> (Emphasis supplied).

While Defendants agree with the Magistrate's Report and Recommendation that sets the date for the putative class at the date that notice is sent to the class, the Magistrate's Order in this case is in direct conflict.

Footnote 2 of the Magistrate's Order provides:

> As it cannot be determined when each Branch Manager will choose to opt in and file his/her consent with the Court, the Court will allow discovery of the names and addresses of all Branch Managers who have worked for QC <u>within three years prior to January 9, 2006, the date Fortna filed suit.</u>

This Court should clarify the conflicting portions of the Magistrate's Order and Report and Recommendation to follow the recommendations setting discovery of potential class members three years prior to the date notice is given. To allow for Plaintiff to notify those person who worked as branch managers beginning in January of 2003 would add numerous persons to the putative class, none of whom would have a cause of action that was not barred by the three year limitations period. To allow the additional putative class members notice would be futile, and fail to promote the efficiencies contemplated by the collective provisions of the Act.

5

### B. The Class Definition is Overly Broad as to Ending Date.

Similar to the argument raised with regard to the scope of persons to whom notice should be sent as set forth above, those persons who receive notice of this action should all be similarly situated to Plaintiff in the fact that they were all paid as exempt employees during their work as branch managers at QC. However, as of March 19, 2006, and subsequent to its self-audit and settlement approved and supervised by the Department of Labor, QC made the voluntary decision to pay all branch managers, regardless of store size, on an hourly basis. This payment policy change included that all branch managers would receive overtime compensation for those hours worked in excess of forty hours per week. (See Declaration[2] of Frances King, attached hereto as Exhibit A).

As a result of this change in policy, any employees of either QC Financial Services, Inc. or its subsidiaries who were hired as branch managers after March 18, 2006, or were promoted to the position of branch manager after March 18, 2006, were not subject to the same policies and procedures with regard to the payment of overtime compensation as the plaintiff in this matter. Those same employees could not, as a practical matter, have claims for failure to properly classify them as non-exempt employees, because their employment and payment have never included the "improper classification" that Plaintiff seeks redress for in this matter.

As a result, the notice to class members should include only those persons who worked as a branch manager from three years prior to the date notice is given <u>up to March 18, 2006</u>. To include those persons who were hired as branch managers after that date would require that a group of employees receive notice for a suit on which they already do not have a claim, and would further require that Defendants go through the time and expense of making motion to this

---

[2]  The Report and Recommendation instructs parties to object pursuant to Fed. R. Civ. P. 72(b). This Rule specifically authorizes the Court to consider "additional evidence."

6

Court to de-certify those persons hired after March 18, 2006 as they are not similarly situated to the Plaintiff herein.

### C. The Magistrate Judge Erred in Requiring Notice to Employees Who Have Settled Their Claims as Part of a DOL-Supervised Settlement.

Defendants also object to the Report and Recommendation because it defines the class to include employees who are statutorily barred from pursuing a §216(b) claim. The Report and Recommendation properly quotes then misapplies the controlling statute, 29 U.S.C. §216(c). Specifically, the Report and Recommendation, at plaintiff's insistence, seeks to impose additional conditions on a DOL-Supervised Settlement. This Court should follow the plain language of the statute.

Before 1949, the Supreme Court had held that it was against public policy for an employee to waive his or her right to unpaid compensation. See *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) (statutory wages cannot be waived by agreement). In 1949, Congress amended the FLSA to authorize the Secretary to recover back wages for employees through the settlement of cases. This amendment to §16(c) of the Act has two distinct provisions. First, it authorizes the Secretary to supervise the payment of unpaid minimum wage or overtime compensation. Second, it provides that an employee's agreement to accept the payment supervised by the Secretary waives the employee's right to bring a private action. 29 U.S.C. §216(c).

The legislative history explains the purpose of this provision. Prior to 1949, Wage-Hour had followed a policy "in cases which it did not believe justified litigation, of requesting employers to make voluntary restitution to employees affected [by] unpaid minimum wages or overtime compensation due under the act." S.Rep. 81-640, reprinted in 1949 U.S.C.C.A.N. 2241, 2248. Voluntary restitution had declined during the three years prior to the 1949 FLSA

7

amendments. In explaining the reason for the decline, the Senate Committee on Labor and Public Welfare recognized that it was difficult, if not impossible, for the Department to collect back wages short of litigation unless an employer knows that any payment under a settlement with the Department of Labor will satisfy its liability for back wages and liquidated damages.

As stated in the Committee report, "One of the principal effects of the Committee proposal will be to assure employers who pay back wages in full under the supervision of the Wage and Hour Division that they need not worry about the possibility of suits for liquidated damages and attorney's fees." *Id.* at 2249. Similarly, the Senate Committee agreed with the report of the House Committee on Education and Labor that the amendment "is essential to the equitable enforcement of the provisions of the act and that it would be welcomed by fair-minded employers who wish to make restitution for perhaps unwitting violations of the act by encouraging them to do so in such a manner to ensure that their liability would be limited to the amount of the wages due." *Id.*

The purpose of the 1949 amendment was, therefore, to give the Secretary the tools to enter into settlements for the recovery of back wages. The essential tool the legislation provided was the leverage to assure employers that the payment of back wages, when supervised by the Secretary and agreed to by the employee, would resolve the matter. The Report and Recommendation's granting of plaintiff's request to include the employees who have settled their claims effectively obliterates the "essential tool" provided by Congress.

As stated in the Report and Recommendation, Section 16(c) of the Fair Labor Standards Act provides, in pertinent part:

> The Secretary is authorized to supervise the payment of the unpaid . . . overtime compensation owing to any employee or employees under Section 206 or Section 207 of this title, and the agreement of any employee to accept such payment shall, *upon payment* in full constitute a waiver by such employee of any right he may

8

>have under subsection (b) of this section to such unpaid . . . overtime compensation and an additional equal amount as liquidated damages. 29 U.S.C. §216(c) (emphasis supplied).

Department of Labor Form WH-58 parallels the statutory provision, "*acceptance* of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for back wages under Section 16(b) of that Act." (Emphasis supplied).

Despite the plain language of the statute that it is the employee's acceptance of payment that extinguishes claims, the Report and Recommendation also imposes an additional requirement that the employee execute a WH-58. *See* Report and Recommendation, p.10-11, (excluding branch managers who have signed a WH-58 Form from the defined class, but including within the class branch managers who cashed checks without signing the WH-58 Form). The Report and Recommendation's distinction between settling employees who signed the WH-58 and settling employees who did not sign the WH-58 has no statutory basis, it is contrary to the legislative history of the 1949 amendments and is contrary to the Department of Labor's interpretation, as set forth in Form WH-58.[3] Therefore, the class definition in the Report and Recommendation that includes employees whose claims are barred should be rejected.

The courts interpreting §216(c) follow the plain language of the statute and recognize that <u>it is the acceptance of payments that acts as a bar</u>. *See Heavenridge v. Ace-Tex Corp.* 1993 W.L. 603210 (E.D. Mich.); *Bullington v. Fayette County School District*, 540 S.E.2d, 664, 667 (Ga. Ct. App. 1000). Neither plaintiff nor the Report and Recommendation cite to even one case where

---

[3] The Department of Labor's interpretation is entitled to deference pursuant to *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837(1984).

9

signature of a WH-58 Form is required to extinguish claims.[4]  Proper consideration of the issue is described in *Mion v. Aftermarket Tool & Equipment*, 990 F. Supp. 535 (W.D. Mich. 1997):

> This Court agrees with the Court in *Heavenridge*, . . . that the terms of the release form predicated waiver on Mion's acceptance of Aftermarket's payment, and not on Mion's signature.  Therefore, the Court finds that Mion's cashing of the check constituted a waiver of her §2617 claims." *Id* at 541.

See also *Solis v. Hotels.Com Texas, Inc.*  2004 W.L. 1923754 at *4 (N.D. Tex.) (Barring the claims of Plaintiff's "who *negotiated checks* for wages owed as determined by the DOL pursuant to 29 U.S.C. §216(c)").

Both the plain language of Section 216(c) and the case law interpreting the statute condition settlement on an employee's acceptance of payment.  The Report and Recommendation's attempts to condition settlement on an employee's signature on the Form WH-58 should be rejected.  Employees who have accepted payment as part of the DOL-Supervised Settlement are barred from participating in a Section 216(b) action and they should be excluded from any class[5] certified in this case.

The Report and Recommendation should also be rejected because the Magistrate Judge overstepped his authority.  This Court should not overturn a wage-hour supervised settlement

---

[4] The Report and Recommendation's citation to *Roebuck v. Hudson Valley Farms, Inc.*, 239 F.Supp.2d 234 (N.D.N.Y. 2002) is inapposite.  There, the Court was considering the effect of waivers signed two years prior to the then-current action.  Here, we are dealing with settlements that are occurring contemporaneously with this case and, as set forth in Section B above, there can be no continuing claims because QC Financial now pays overtime to all of its branch managers.

[5] There is no legitimate interest served by a court-authorized solicitation sent to employees who have settled their claims.  Sending notice just operates to add costs and harass defendants.  This Court should reject the Report and Recommendation's inherent invitation to settling employees to violate Rule 11.  *See e.g.*, *Conservative Club of Washington v. Finkelstein*, 738 F. Supp. 6 (D.D.C. 1990) (Rule 11 violation where plaintiff sought to assert claim barred by settlement agreement); *Cochran v. Ernst & Young*, 758 F. Supp 1548 (E.D. Mich. 1991) (claim brought after settlement agreement that was released in the agreement merited sanctions).

and associated employee waiver. The Secretary's decision to settle is committed to the agency's non-reviewable discretion under *Heckler v. Chaney*, 470 U.S. 821 (1985). Because the Report and Recommendation operates as a *de facto* nullification of a DOL-supervised settlement, it is contrary to United States Supreme Court precedent.

The statutory provision at issue in *Chaney* stated, "The Secretary is authorized to conduct examinations and investigations . . .." *Chaney*, 470 U.S. at 835. The Court found that "[t]he Act's enforcement provisions thus commit complete discretion to the Secretary to decide how and when they should be exercised." *Id.* Similar statutory language governs the Secretary of Labor's supervision of the settlement with QC Financial Services and its subsidiaries. "The Secretary is authorized to supervise the payment of the unpaid . . . overtime compensation owing to any employee or employees . . .." 29 U.S.C. §216(c).

The FLSA's "language of authorization" evinces Congress's intent to give the agency broad discretion to act. See *Sierra Club v. Whitman*, 268 F.3d 898, 904 (9th Cir. 2001). The decision to enter into a settlement agreement is a legitimate exercise of the Secretary's non-reviewable enforcement discretion. Indeed, the D.C. Circuit has held that an agency's decision to settle a case "is a paradigmatic instance of an agency exercising its presumptively non-reviewable enforceable discretion." *Baltimore Gas & Electric Co. v. FERC,* 252 F.3d 456, 460(D.C. Cir. 2001). As the D.C. Circuit so apply stated, "We have previously expressed hesitation to position this court as to supreme supervisor of Federal agency enforcement, a role more effectively performed by the Executive under congressional scrutiny." *Coker v. Sullivan*, 902 F.2d 84, 89 (D.C. Cir. 1990).

The language and structure of the FLSA, as well as legislative history, provides the Secretary of Labor with broad discretion to implement enforcement decisions, including

11

supervising the payment of back wages under a settlement agreement pursuant to Section 16(c). Therefore, the authority of the Secretary to supervise the payment of unpaid overtime compensation under Section 16 (c) of the FLSA is not subject to judicial review in this instance. The Report and Recommendation's definition of a class that includes hundreds of parties who participated in a DOL-supervised settlement improperly intrudes on the Department of Labor's non-reviewable discretion. Participants in the supervised settlement should be excluded from the class.

### D. The Magistrate Judge Erred in Requiring Notice to Employees Who Are Not Similarly Situated to Plaintiff.

The Report and Recommendation defines the class to include QC Financial employees who are not similarly situated to plaintiff. Indeed, Congress and the Department of Labor established FLSA exemptions that distinguish between management personnel who oversee two or more full time subordinates (executive exemption) and those managers who supervise less than two full time employees (administrative exemption). See, 29 U.S.C. §213(a)(1); 29 C.F.R. Parts 541.100 & 541.200. While plaintiff falls squarely within the administrative exemption, he is not exempt by reason of the executive exemption. Branch Managers who oversee two or more full time employees are not "similarly situated" and must be excluded from the proposed class. Any class should be limited to "small store" Branch Managers.[6]

The essence of Fortna's Complaint is that QC misclassified its branch managers. The alleged misclassification, however, is not the same for all branch managers. Because this case turns on the application of an exemption, it is particularly inappropriate for a collective action. The exemption status of any employee must be determined on the basis of whether his duties,

---

[6] Some QC Financial stores fluctuate throughout the year between small stores and large stores. In the settlement with the Department of Labor, QC Financial treated such fluctuating stores as "small" stores, included them within the settlement and paid back overtime compensation.

12

responsibilities and salary meet all requirements of the appropriate regulation. This is "extremely individual and fact-intensive, requiring a detailed analysis of the time spent performing administrative duties and a careful factual analysis of the full range of the employee's job duties and responsibilities." *Mike v. Safeco Ins. Co.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003)(citations and internal quotes omitted).

The Report and Recommendation's overly-broad definition of the class diminishes any benefit gained from proceeding as a collective action. Full and complete disposition of Fortna's claims will leave the majority of claims unresolved. While there is some overlap between the duties of small and large store Branch Managers, large store managers have additional obligations, including responsibility for more subordinate staff members and the duties inherent therein. Multiple proceedings will be necessary to resolve the claims of managers working in the two distinct and separate employment settings.

The Report and Recommendation downplays the significance of the distinction between large and small store managers by categorizing the issue as a defense that should not be considered at this time. The Report and Recommendation misconstrues the nature of the dispute between plaintiff and QC. It is, after all, the application of exemptions that will control the outcome of the case. Where, as here, the outcome is controlled by exemptions, plaintiff's class should be limited to those putative plaintiffs whose claims are controlled by the same exemption. The distinction between administrative and executive exemptions preclude a finding that plaintiff is similarly situated to large store Branch Managers.

Because disposition of plaintiff's claim will leave unresolved the claims of all large store managers, plaintiff is not similarly situated to large store managers. Judicial resources will be

13

wasted by the multiplicity of proceedings necessary to adjudicate the distinct claims. Therefore, this Court should modify the Report and Recommendation's overly-broad class definition.

### E. Plaintiff Is an Inadequate Class Representative.

As the Magistrate Judge recognized, adequacy of a class representative is an appropriate factor the Court may consider in determining whether to exercise its discretion to certify the collective action and approve the Notice. *See* Report and Recommendation, p. 12. Given that the Notice plaintiff intends to send carries the imprimatur of this Court, the adequacy of plaintiff as a class representative warrants more careful consideration than is evident in the Report and Recommendation. Given plaintiff's participation in a kickback scheme (along with the other affiants in support of the Motion to Conditionally Certify, Phillip Harris and Kelly Jackson), he should not be placed in a position of trust to act on behalf of others.

Although 29 U.S.C. §216(b) does not expressly incorporate Fed. R. Civ. P. Rule 23(a)(4)'s adequacy of representation requirement, the adequacy of a class counsel or a class representative can be considered in a collective action because the court has an inherent interest in assuring that opt-in plaintiffs are adequately represented. *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 682 (D. Kan. 2004). The requirement that plaintiff "adequately represent" the class is not present to the same degree as a Rule 23 action. This does not mean, however, that adequacy is irrelevant and "the court has an equitable interest in insuring that [opt-in plaintiffs] are adequately represented. *White*, 204 F. Supp. 2d at 1315.

The Opt-in Consent to Sue Form (attachment 2 to Report and Recommendation) shows the significance of this issue. Paragraph 5 of the form states:

> I designate the Class Representative George Fortna as my agent to *make decisions on my behalf* concerning the litigation, the method and manner of conducting this litigation and *all other matters* pertaining to this lawsuit. (Emphasis supplied).

14

Given the authority ceded by each opt-in plaintiff the Court should, in the exercise of its discretion, consider the consequences of the consent-to-sue form on a potential opt-in plaintiff. This is particularly true given that the proposed class is a nation-wide class and the vast majority of putative class members cannot possibly be acquainted with Mr. Fortna.

Defendants have presented sworn testimony that Mr. Fortna was personally involved in a kickback scheme wherein he received proceeds of loans made to "customers" on uncollectible loans.[7]  At the same time, plaintiff has asked for this Court's approval of a form designating him as agent to make all decisions relating to the litigation.  Plaintiff's trustworthiness and reliability must be considered.  His participation in a kickback scheme forecloses a finding that he is fit to represent all of the other branch managers.

Because the consent-to-sue form allows Mr. Fortna to conduct the litigation at his sole and absolute discretion, this Court should consider whether he is an adequate representative before allowing court-authorized solicitation of other putative class members to appoint Mr. Fortna as their agent.  Based upon the questionable exercise of discretion by Mr. Fortna while he was employed by QC Financial Services, he should be rejected as a class representative.

### IV.    CONCLUSION

Wherefore, for the foregoing reasons, the Magistrate's Report and Recommendation should be rejected and Plaintiff's Motion for Conditional Collective Action Certification should be denied.  In the alternative, the class should be defined to include only persons who are similarly situated to plaintiff and who are entitled to assert claims.

---

[7] The other store manager who has signed a consent-to-sue form, Kelly Jackson, participated in the same kickback scheme.

15

Respectfully submitted,

DOERNER, SAUNDERS, DANIEL
 & ANDERSON, L.L.P.

By  s/ Michael C. Redman
    Michael C. Redman, OBA No. 13340
    mredman@dsda.com
    Raymond H. Tipton, III, OBA No. 20871
    rtipton@dsda.com
    320 South Boston Avenue, Suite 500
    Tulsa, Oklahoma  74103-3725
    Phone:  918-582-1211
    Fax:  918-591-5398


SEIGFREID, BINGHAM, LEVY
 SELZER & GEE, P.C.

Rachel H. Baker, MO. #42200
rbaker@sblsg.com
David E. Shay, MO. #37677
dshay@sblsg.com
2800 Commerce Tower
911 Main Street
Kansas City, Missouri  64105
Phone:  816-421-4460
Fax:  816-474-3447
Pro Hac Vice

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2006, I electronically transmitted the foregoing document (Defendants' Objections to Magistrate's Report and Recommendations) to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

David J. Schaffer
The Schaffer Law Firm, PLLC
Suite 450
406 South Boulder Avenue
Tulsa, Oklahoma 74103

                                      s/ Michael C. Redman
                                      Attorney for Defendants